IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**Carolyn E. Wilson**                                                                             **Plaintiff**

**Cause No. 3: 12-CV-144-JTK**

**Carolyn W. Colvin, Acting Commissioner,**                                          **Defendant**
**Social Security Administration**

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

Carolyn E. Wilson seeks judicial review of the denial of her application for disability insurance benefits and supplemental security income. In the past, Wilson worked as a certified nursing assistant.[1] She last worked as a housekeeper for Wal-Mart.[2] She maintains she lost that job because she missed too many work days due to migraines and her son's illness.[3] She has not sought work since that time.

When she applied for disability benefits, Wilson alleged disability beginning in 2002 — at age 25 — but her attorney amended her onset date to July 1, 2008, because she worked until June 2008.[4] She based disability on night blindness, a cataract in the

---

[1]SSA record at p. 53 (testifying that she was certified as a CNA); p. 191 (reporting part time work as a CNA when she applied for disability benefits); p. 213 (describing her work as a CNA); p. 239 (reporting work as a CNA and stating that she was fired because she missed too many work days).

[2]*Id*. at pp. 31 & 529.

[3]*Id*. at pp. 31, 54, 168 & 238.

[4]*Id*. at pp. 50-51.

right eye, migraine headaches, and pain in her hips and knees.[5] Wilson was 31 years old on her amended onset date.

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined that although Wilson had severe impairments — ankle pain, right knee pain, back pain, depression, migraines, obesity, and carpal tunnel syndrome[6] — Wilson could do some sedentary work.[7] Because a vocational expert identified available work, the ALJ determined Wilson was not disabled under the Social Security Act and denied the application.[8]

After the Commissioner's Appeals Council denied a request for review,[9] the ALJ's decision became a final decision for judicial review.[10] Wilson filed this case to challenge the decision. In reviewing the decision, the court must determine whether

---

[5]*Id*. at pp. 190 & 196.

[6]*Id*. at p. 12.

[7]*Id*. at p. 14 (requiring sedentary work in which interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote, few variables, little judgment; and supervision required is simple, direct and concrete).

[8]*Id*. at p. 19.

[9]*Id*. at p. 1.

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that Commissioner's appeal procedure permits claimants to appeal only final decisions).

substantial evidence supports the decision and whether the ALJ made a legal error.[11]

"Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[12]

**Credibility**. Wilson challenges the ALJ's assessment of her credibility.[13] She maintains the ALJ failed to explain how the *Polaski* factors made her more or less credible or why the points he noted detracted from credibility. She contends the mentioned points are consistent with disability.

An ALJ has a duty to assess the claimant's credibility.[14] To assess Wilson's credibility, the ALJ followed the required two-step process[15] and considered the *Polaski* factors.[16] The ALJ is not required to methodically discuss each *Polaski* factor, so long as

---

[11]*See* 42 U.S.C. § 405(g) (requiring district court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[12]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (internal citation omitted).

[13]Docket entry # 11, pp. 32-34.

[14]*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[15]*See* SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[16]In considering the credibility of a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and

the ALJ acknowledged and examined those considerations before discounting the claimant's subjective complaints.[17] Thus, the question before the court is whether substantial evidence supports the ALJ's credibility assessment.[18]

Substantial evidence supports the ALJ's credibility assessment because Wilson's allegations were inconsistent with the record as a whole. "Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."[19] Wilson based disability in substantial part on migraine headaches, but medical evidence indicated her migraines improved with daily preventive medication and migraine pain relievers. After her last medical checkup, her PCP characterized her migraines as "stable."[20] This characterization contradicted Wilson's testimony five days later that migraines

---

treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). *See* SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements.*

[17]*Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

[18]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that court must determine whether decision is supported by substantial evidence in the record as a whole).

[19]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

[20]SSA record at p. 651 (migraines appear to be stable).

prevented her from working.[21] The inconsistency between the PCP's characterization of Wilson's migraines and her testimony weighed against her credibility. A reasonable mind would accept the evidence as adequate to show that Wilson over-stated limitation from migraines.

The medical evidence was also inconsistent with complaints of disabling pain in the back, ankles, and knees. Radiographic imaging showed nothing supporting such severity. A June 2009 MRI of the lumbar spine showed "very mild" degenerative disk disease, without significant canal or neuroforaminal stenosis.[22] The characterization "very mild" and the absence of stenosis contradicted the allegation of disabling back pain.[23]

Imaging of the left ankle was negative;[24] no physician ordered imaging of the right ankle. Imaging of the problematic knee — the right knee — did not substantiate disabling pain.[25] Wilson's doctor treated the knee by prescribing physical therapy.[26]

---

[21]*Id*. at p. 33 (explaining why migraines prevent her from working).

[22]*Id*. at p. 538.

[23]John T. Lohr, 5 The Gale Encyclopedia of Med. 4090 (4th ed.) ("Spinal stenosis is any narrowing of the spinal canal that causes compression of the spinal nerve cord. … Spinal stenosis causes pain in the buttocks, thigh, and calf and increasing weakness in the legs.").

[24]SSA record at p. 550.

[25]*Id*. at pp. 640-41 (MRI of right knee showed cystic changes at the lateral tibial plateau, but no meniscus tear; bone scan of right knee showed cystic changes at the

This conservative treatment indicated that the pain could be managed with treatment.[27] The record substantiates some degree of pain,[28] but not disabling pain. A reasonable mind would accept the inconsistency between Wilson's allegations and the objective medical evidence as adequate to show Wilson over-stated her pain and limitation. Thus, substantial evidence supports the ALJ's credibility assessment.

**Sedentary work**. Wilson challenges the determination that she can do sedentary work. She complains that the ALJ did not account for carpal tunnel syndrome or identify anything contradicting her allegation about a limited ability to sit.[29] Relying on these omissions, she maintains the hypothetical question failed to capture all of her impairments.[30] She maintains the ALJ's decision is not supported by substantial evidence.

For substantial evidence to exist, a reasonable mind must find the evidence adequate to show Wilson can do sedentary work. Sedentary work "involves lifting no

---

lateral tibial plateau; no significant pathology seen in bone scan).

[26]*Id.* at p. 643.

[27]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

[28]SSA record at p. 651 (observing a pretty bad limp as Wilson tried to unload right knee).

[29]Docket entry # 11, p. 35.

[30]*Id.* at p. 36.

more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[31] Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[32]

A reasonable mind would accept medical treatment notes as adequate to show Wilson can do some sedentary work. Wilson's PCP characterized her migraines as stable.[33] Radiographic imaging of the back showed "[v]ery mild degenerative disk disease" and "[n]o significant canal or neuroforaminal stenosis."[34] Orthopedic examination of the ankles demonstrated "full active/passive range of motion with mild discomfort upon range of motion testing," no swelling, and no defect in the Achilles tendons.[35] Imaging of the knees showed no fracture, dislocation, degenerative disk disease, bone destruction, or bone/cartilage fragments.[36] Orthopedic examination of the right knee showed no swelling, problem with extension, or meniscus tear; the

---

[31] 20 C.F.R. §§ 404.1567(a), 416.967(a).

[32] SSR 96-9p, *Pol'y Interpretation RulingTitles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[33] SSA record at p. 651.

[34] *Id.* at p. 538.

[35] *Id.* at p. 643.

[36] *Id.*

examination revealed tenderness in the front of the knee.[37] A subsequent MRI showed a fluid-filled cyst behind the right knee.[38] Such cysts may cause pain and swelling, but treating the cyst with corticosteroid medication, fluid drainage, or physical therapy usually provides relief.[39] A reasonable mind would accept this evidence as adequate to support sedentary work.

The evidence of carpal tunnel syndrome does not preclude sedentary work. An August 2007 nerve conduction study confirmed "mild" carpal tunnel syndrome in both hands,[40] but Wilson contemporaneously demonstrated the ability to hold a pen and write, touch fingertips to palm, oppose thumb to fingers, and pick up a coin.[41] This demonstration contradicted significant limitation. Moreover, Wilson did not complain

---

[37]*Id.*

[38]*Id.* at p. 640.

[39]David Cramer & Barbara Robb, 2-7A Attorneys' Textbook of Med. § 7A.06 (3d ed.) ("Initial treatment consists of application of ice, compression with a bandage, use of a nonsteroidal anti-inflammatory drug (NSAID), and restriction of any activities that produce symptoms. Aspiration of fluid from the bursa is rarely performed, unless infection is suspected. Physical therapy to strengthen the lower extremity is recommended for those with chronic bursitis. If symptoms do not resolve, a corticosteroid can be injected into the joint. Although most cases of bursitis resolve with conservative treatment, some individuals experience persistent swelling and pain. Surgical excision of the involved bursa may be considered in these instances.") (internal citation omitted).

[40]SSA record at p. 410.

[41]*Id.* at p. 388.

about carpal tunnel syndrome during her February 2011 orthopedic examination.[42] The failure to complain indicates carpal tunnel syndrome does not significantly impact the ability to work. Two weeks prior to her orthopedic examination, Wilson told her PCP that wrist splints and pain relievers kept her pain at bay.[43] The PCP characterized carpal tunnel syndrome as "reasonably stable."[44]

Wilson's weight[45] poses perhaps the most significant functional limitation. Her weight corresponds to a body mass indicator (BMI) of 50; a BMI over 30 is considered obese. Because obesity can limit function,[46] an ALJ must consider obesity in determining a claimant's ability to work. The ALJ accounted for obesity and reduced Wilson's ability to work to sedentary.[47] The ALJ reduced sedentary work — based on a mental diagnostic evaluation[48] — and required work in which interpersonal contact is

---

[42]*Id*. at p. 642.

[43]*Id*. at p. 632.

[44]*Id*.

[45]*Id*. at p. 637 (322.4 pounds on Jan. 25, 2011).

[46]SSR 02-1p: *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Obesity*, ¶ 8.

[47]*Id*. at p. 17 ("After review of the evidence of record, considering the impairments, obesity, and mild to moderate pain, the undersigned finds that the claimant can perform work within the full range of sedentary classification exertionally.").

[48]*Id*. at p. 404 (reporting the following: (1) she can communicate and interact in a socially adequate manner; (2) she has the cognitive intelligence to cope with demands of

incidental to the work performed; the complexity of tasks is learned and performed by rote, few variables, little judgment; and supervision required is simple, direct and concrete.

The ALJ incorporated these impairments into a hypothetical question and asked a vocational expert about available work. A hypothetical question is sufficient if it captures the concrete consequences of the claimant's deficiencies.[49] The ALJ's restrictions captured the concrete consequences of Wilson's deficiencies; in particular, (1) sedentary work due to obesity and mild to moderate pain, and (2) work in which interpersonal contact is incidental to the work performed; the complexity of tasks is learned and performed by rote, few variables, little judgment; and supervision required is simple, direct and concrete.[50] The omission of carpal tunnel syndrome and limited sitting flowed from the medical evidence and the evaluation of credibility. When asked about sitting, standing, and walking in April 2011, Wilson identified problems with standing and walking, but not sitting.[51] Even with the ALJ's restrictions, the vocational

---

work; and (3) she can sustain concentration and persistence toward completion of tasks within an acceptable time frame so long as she isn't having a migraine).

[49]*Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011).

[50]SSA record at p. 44.

[51]*Id*. at p. 35.

expert identified available work.[52] If work exists that the claimant can do, she is not disabled under the Social Security Act.[53]

**Conclusion**. Substantial evidence supported the ALJ's decision denying Wilson's application. The ALJ made no legal error. For these reasons, the court DENIES Wilson's request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

It is so ordered this 20th day of August, 2013.

_____
United States Magistrate Judge

---

[52]*Id*. at p. 44. (identifying scale operator as representative sedentary work).

[53]*McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).